No. 24-6119
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

CLINTON BROWN,

*Plaintiff-Appellant,*

v.

EMIL ASSENTATO, TAX DEED ENTERPRISES LLC, STEVE WEERA
TONASUT TRUST,

*Defendants-Appellees*

On Appeal from the United States District Court
for the Central District of California
No. 2:23-cv-02972
Hon. Maame Ewusi-Mensah Frimprong

_____

## APPELLANT'S OPENING BRIEF

_____

Clinton Brown
1431 Ocean Ave, Unit 413
Santa Monica, CA 90401
clinton@atlasinc.solar
310-775-7990

*Self-Represented - Appellant*

# TABLE OF CONTENTS

**Page**

ADDENDUM OF STATUTORY PROVISIONS....................................................3

TABLE OF AUTHORITIES ..................................................................................4

INTRODUCTION ...................................................................................................7

JURISDICTIONAL STATEMENT .....................................................................10

CONGRESSIONAL AUTHORITIES..................................................................11

ISSUES PRESENTED...........................................................................................12

STATEMENT OF THE CASE.............................................................................12

SUMMARY OF THE ARGUMENT ...................................................................14

STANDARD OF REVIEW ...................................................................................14

ARGUMENT .........................................................................................................15

     I.    The District Court Failed as a Matter of Law to Grant the Transactions in Question the Specialized Antifraud Protection Afforded by Federal Securities Laws...................................................................................15

     II.   The District Court Abused its Discretion by Dismissing the FAC with Prejudice, Despite New Allegations in the FAC and Judicial Notice of Those Allegations, at the Motion to Dismiss Stage…………………24

CONCLUSION ......................................................................................................26

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM OF STATUTORY PROVISIONS

## ADDENDUM OF STATUTORY PROVISIONS

An addendum of pertinent statutory provisions has been filed with this brief.

Ninth Cir. R. 28-2.7.


Date: 01/19/2025                 */s/ Clinton Brown*, Self-Represented
                                 Clinton Brown

# TABLE OF AUTHORITIES

*Bender v. Cont'l Towers Ltd. P'ship,* 632 F.Supp. 497, 500–01 (S.D.N.Y.1986)...16

*Bogy v. United States,* 96 F.2d 734, 736, *certiorari denied,* 305 U.S. 608, 59 S.Ct. 68, 83 L.Ed. 387 (6th Cir. 1938)....................................................................20

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collect. Serv.*, 911 F.2d 242 (9th Cir. 1990) ........................................................................................................................24

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).................14

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................ 15, 24, 25

*Howard v. America Online Inc.*, 208 F.3d 741, 749-750 (9th Cir. 2000) ...............26

*Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973)..........................................25

*Kosnoski v. Bruce,* 669 F.2d 944, 947 n. 3 (4th Cir.1982) .......................................16

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005) ...............................................................................................................26

*Llanos v. United States,* 206 F.2d 852, 854 (9th Cir. 1953) ....................................20

*Manzarek v. Marine*, 519 F.3d 1025 (9th Cir. 2008)........................................ 13, 24

*Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177 (1803) ................................ 19, 21

*Marine Bank v. Weaver*, 455 U.S. 551 (1982)........................................ 8, 10, 17, 18

*McConnell v. Frank Howard Allen & Co.,* 574 F. Supp. 781, 786 (N.D. Cal. 1983) .................................................................................................................. 15, 19

*Polich v. Burlington N., Inc.*, 942 F.2d 1467 (9th Cir. 1991)..................................24

*Salameh v. Tarsadia Hotel, Corp.*, 726 F.3d 1124 (9th Cir. 2013) .................. 14, 16

*SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir. 1973) ..............16

*SEC. v. Murphy*, 626 F.2d 633, 644–45 (9th Cir. 1980)..........................................21

4

*SEC. v. Ralston Purina Co.*, 346 U.S. 119, 73 S. Ct. 981 (1953)...........................21

*SEC v. Rubera*, 350 F.3d 1084 (9th Cir. 2003).........................................15

*SEC v. W.J. Howey Co.,* 328 U.S. 293 (1946).............. 10, 12, 13, 15, 16, 18, 19, 21

*Suetter v. United States,* 140 F.2d 103, 104 (9th Cir. 1944)...................................20

*Teague v. Bakker,* 35 F.3d 978, 987 n. 9 (4th Cir.1994) .......................................16

*United Hous. Found., Inc. v. Forman,* 421 U.S. 837, 848, 95 S.Ct. 2051, 44
    L.Ed.2d 621 (1975).......................................................................16

*United States v. $129,374 In United States Currency*, 769 F.2d 583 (9th Cir. 1985)
    ...........................................................................................14

*United States v. Carman*, 577 F.2d 556 (9th Cir. 1978).............................. 9, 10, 14

*United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004)...................................26

*Warfield v. Alaniz*, 569 F.3d 1015 (9th Cir. 2009) .................................................17

**Statutes**

15 U.S.C. § 77(a)…………………………………………………11, 31
15 U.S.C. § 77(b)…………………………………………………11, 31
15 U.S.C. § 77(c)…………………………………………………12, 31
18 U.S.C. § 1962(a)………………………………………………26, 31
18 U.S.C. § 1962(b)………………………………………………26, 32
18 U.S.C. § 1962(c)………………………………………………26, 32
18 U.S.C. § 1962(d)………………………………………………26, 32
18 U.S.C. § 1964(c)………………………………………………26, 32
28 U.S.C. § 1291…………………………………………………10, 32
28 U.S.C. § 1331…………………………………………………10, 33

**Other Authorities**

Maura K. Monaghan, *An Uncommon State of Confusion: The Common
Enterprise Element of Investment Contract Analysis*, 63 Fordham L. Rev.
2135 (1995). Available at: https://ir.lawnet.fordham.edu/flr/vol63/iss6/6.
...........................................................................................9

5

74                73d CONGRESS.   SESS. I.   CH. 38.   MAY 27, 1933.

[CHAPTER 38.]

## AN ACT

May 27, 1933.
[H.R. 5480.]
[Public, No. 22.]

To provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes.

Securities Act of 1933.
*Post*, p. 1026.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## TITLE I

### SHORT TITLE

Title cited.

SECTION 1. This title may be cited as the " Securities Act of 1933 ".

### DEFINITIONS

Definitions.

SEC. 2. When used in this title, unless the context otherwise requires—

"Security."
*Post*, p. 905.

(1) The term " security " means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of interest in property, tangible or intangible, or, in general, any instrument commonly known as a security, or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing.

*[Intentionally Left Blank]*

## INTRODUCTION

### a. A Dream Defrauded

Appellant-Plaintiff, Brown had a vision: a solar farm, along the 101, on 32.4 acres in Calabasas, California. For him, this was more than just a real estate purchase—it was a chance to build something transformative, both environmentally and financially. When the property was listed for $299,000, Brown moved quickly, investing his savings to secure a 50% stake in the land. The other half remained with Assentato, a seasoned investor operating through Tax Deed Enterprises LLC, among other members ("TDE"). Together, they formed what Brown believed was a limited partnership rooted in shared resources and a common goal.

Brown threw himself into the project, leveraging his expertise to overcome the challenges of regulatory approvals, logistics, and development. Assentato's role was clear: he would provide the financial backing to see the project through, starting with a $250,000 line of credit and promises of further funding as needed. But as costs mounted, Assentato reneged on his promises. Left scrambling, Brown turned to the Steve Weera Tonasut Trust ("Weera"), the holder of the first deed of trust, who offered a $100,000 loan—on the condition that Brown sell 15% of his ownership. Reluctantly, Brown agreed, reducing his share to 35%.[1]

---

[1] See Section 3(a)(11);15 U.S.C. § 77c(a)(11) "intrastate exemption"; All securities transactions, even exempt transactions, are subject to the antifraud provisions of the Federal securities laws. (Citation omitted).

What began as a dream of collaboration and shared success quickly turned into a dream defrauded. Assentato & TDE retained 50% ownership without contributing further, while Brown bore the full weight of the risks. Emails and phone calls from Weera demanded that Brown must persuade Assentato & TDE to sell the property entirely to Weera, to prevent foreclosure of the entire property.

Reflecting on the arrangement, Brown saw it for what it was: not a simple land purchase, but an investment contract under Federal securities law. His investment, paired with the Defendants' promises of financial support, formed a speculative venture—one where profits depended not just on Brown's development efforts but also on the Defendants' financial contributions. Instead, those contributions were weaponized to dilute Brown's ownership and control, if there was indeed, any.

Now, Brown comes to this Court seeking recognition of the arrangement as a securities transaction subject to the antifraud provisions of the Acts. The law exists to protect individuals like Brown from schemes that distort power and exploit reliance. This appeal asks the Court to affirm that this arrangement can fall under Federal securities law, safeguarding fairness in speculative ventures like *this one* that stole Brown's dream. In other words, can this business arrangement be afforded the antifraud provisions under Federal securities law or is this *Marine Bank* sans *footnote 11*?

### b. Procedural History

Appellant-Plaintiff Brown filed a Federal securities claim, against Defendants Emil Assentato, Tax Deed Enterprises LLC and Steve Weera Tonasut Trust on April 20, 2023, for failure to register an investment contract and Rule 10(b) fraud. The District Court found that "Brown adequately pleaded the sale of a security" but ordered leave to amend as to the Rule 10(b) claims on December 6, 2023. *See* Excerpts of Record at 70-73.

The District Court rescinded its determination that "Brown adequately pleaded the sale of a security" on September 27, 2024, ruling that "Brown has not adequately pleaded that a security was bought, sold, or offered to be sold" and dismissed the FAC with prejudice. *See* Excerpts of Record at 19-23.

The threshold question in any securities litigation is whether the instrument at issue is a security. An investor seeking relief in Court requires an affirmative answer to this question before invoking the protections of the Securities Acts.[2] Thus, many important consequences, therefore, flow from the critical determination of whether a given instrument is a security. The characterization of a transaction as a security raises questions of law and fact, but the ultimate issue of whether or not a particular set of facts is an investment contract is a question of law. *United States v. Carman*,

---

[2] Maura K. Monaghan, *An Uncommon State of Confusion: The Common Enterprise Element of Investment Contract Analysis*, 63 Fordham L. Rev. 2135 (1995) at 2135. Available at: https://ir.lawnet.fordham.edu/flr/vol63/iss6/6

577 F.2d 556, 562 (9th Cir. 1978). Last, just as some things which look like real

estate are securities, some things which look like securities are real estate.[3]

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331, arising from

Federal securities laws including the Securities Act of 1933 and the Securities

Exchange Act of 1934. The Ninth Circuit has jurisdiction pursuant to 28 U.S.C. §

1291 over the final judgment of the District Court. *See* Excerpts of Record at 24,

Order Granting Motion to Dismiss with Prejudice, dated September 27, 2024. The

timely notice of appeal was filed on September 30, 2024. *See* Excerpts of Record at

84.

---

[3]**Threshold Requirement: "It Has to Be a Security First."**
As a foundational matter, the Securities Act of 1933 and the Securities Exchange Act of 1934 govern only those instruments or transactions that meet the statutory definition of a "security." *See 15 U.S.C. § 77b(a)(1)*; *United States v. Carman*, 577 F.2d 556, 562 (9th Cir. 1978). Whether a given instrument is a security typically turns on the *economic realities* of the transaction, most frequently tested under the framework set out in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). Thus, before there is any obligation to register under the 1933 Act, and before the antifraud provisions (*e.g.*, Rule 10b-5 under the 1934 Act) become applicable, the instrument must qualify as a "security." If it does not, neither the registration requirements nor the Federal antifraud rules under the securities laws would apply—no matter how unfair or problematic the arrangement might otherwise appear. *See Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982).
Conversely, if the Court determines that the transaction here is an investment contract (or otherwise meets the definition of a "security"), it follows that:
  1. It either must have been registered under the 1933 Act or fall under a valid exemption; and
  2. Defendants are subject to antifraud liability under the 1934 Act for misrepresentations or omissions, even if no registration was required.
Because the District Court's holding turned on the conclusion that Plaintiff "has adequately pleaded the sale of a security" & "has not adequately pleaded that a security was bought, sold, or offered to be sold," this appeal necessarily hinges on whether the facts alleged suffice to show the instrument at issue is indeed a security. *See Carman*, 577 F.2d at 562.

## CONGRESSIONAL AUTHORITIES

**SECTION 1. [77a]** This title may be cited as the ''Securities Act of 1933''

**SEC. 2. [77b] (a) DEFINITIONS**.—When used in this title, unless the context otherwise requires— (1) The term ''security'' means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a ''security'', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

**SEC. 3. [77c] (a) exempted securities** — (11) Any security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing

11

business within or, if a corporation, incorporated by and doing business within, such State or Territory. [4]

## ISSUES PRESENTED

1. Whether the characteristics and features of the transactions necessitate them being subject to the specialized antifraud protection afforded by Federal securities laws.
2. Whether the District Court abused its discretion when it dismissed the FAC with prejudice, despite new allegations in the FAC and judicial notice of those allegations, at the motion to dismiss stage.

## STATEMENT OF THE CASE

This case arises from a series of financial transactions and agreements involving Plaintiff Clinton Brown and Defendants Emil Assentato, Tax Deed Enterprises LLC, and the Steve Weera Tonasut Trust. Plaintiff alleged that these transactions constituted an investment contract under the *Howey* test, forming the basis of his securities claims. Plaintiff further alleged that Defendants engaged in a scheme to defraud him, including the filing of a false Notice of Default to force foreclosure on the property. *See* Excerpts of Record at 46-54. Procedural history includes the dismissal of Plaintiff's FAC by the District Court, which determined that the transactions did not constitute securities and dismissed the claims with prejudice. Thus, this appeal.

---

[4] Securities Act of 1933, as amended, Pub. L. No. 73-22, 48 Stat. 74 (codified as amended at 15 U.S.C. §§ 77a *et seq*.). Available at https://www.govinfo.gov/content/pkg/COMPS-1884/pdf/COMPS-1884.pdf.

**"ii. Brown adequately pleaded the sale of a security.** Drawing all inferences in favor of Brown, this transaction constituted an investment contract and therefore a security. Brown, Assentato, TDE, and the Tonasut Trust all pooled money in a common enterprise and expected to profit based solely on the efforts of Brown. *See W.J. Howey Co.*, 328 U.S. at 297."[5]

**"B. Brown has not adequately pleaded that a security was bought, sold, or offered to be sold.** In a tentative ruling shared with the parties in advance of the hearing, the Court indicated that it was inclined to grant Brown leave to amend his complaint, as it might be possible for Brown to adduce further facts to permit the Court to find that the sale of security element has been properly pleaded. *See Manzarek*, 519 F.3d at 1031. At the hearing, Brown indicated that he has no desire to further amend his complaint and does not believe that he could allege further facts to state a claim if the Court interprets the law as indicated in the tentative ruling. Brown therefore requested that if the claims are dismissed (which Brown argued they should not be), dismissal should be with

---

[5] *See* DC ECF No. 38, Order Granting Motion to Dismiss with Without Prejudice, Hon. Maame Ewusi Mensah Frimprong, No. 2:23-cv-02972 (C.D. C.A. December 6, 2023), at 16-19; Excerpts of Record at 70-73.

prejudice. Accordingly, the Court will not grant Brown leave to amend, and will dismiss Brown's claims with prejudice."[6]

## SUMMARY OF THE ARGUMENT

I.    The District Court failed as a matter of law to grant the transactions in question the specialized antifraud protection afforded by Federal securities laws.

II.   The District Court abused its discretion when it dismissed the FAC with prejudice, despite new allegations in the FAC and judicial notice of those allegations, at the motion to dismiss stage,

## STANDARD OF REVIEW

The appellate court reviews questions of law, including whether an instrument constitutes a security, *de novo*. *United States v. Carman*, 577 F.2d 556, 562 (9th Cir. 1978). Dismissal under Rule 12(b)(6) is also reviewed *de novo*, *Salameh v. Tarsadia Hotel, Corp.*, 726 F.3d 1124, 1129 (9th Cir. 2013), while the denial of leave to amend is reviewed for abuse of discretion. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

The District Court's decision must be affirmed if it can be supported on any ground, even one not relied upon by the District Court. *See United States v. $129,374*

---

[6] *See* DC ECF No. 51, Order Granting Motion to Dismiss with Prejudice, Hon. Maame Ewusi Mensah Frimprong, No. 2:23-cv-02972 (C.D. C.A. September 27, 2024), at 9-14; Excerpts of Record at 19-24.

*In United States Currency*, 769 F.2d 583, 586 (9th Cir. 1985); *Salmeron v. United States*, 724 F.2d 1357, 1364 (9th Cir. 1983); *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000). "Here, the issues are also purely legal, and at the motion to dismiss stage, [the Court] take[s] the allegations in the amended complaint as true." *See Corrine Thomas, et al. v. County of Humboldt, et al*., No. 23-15847 (9th Cir. Dec. 30, 2024) at 19. Leave to amend should be granted, especially if the claims are not futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (cleaned up).

## ARGUMENT

I.  THE DISTRICT COURT FAILED AS A MATTER OF LAW TO GRANT THE TRANSACTIONS IN QUESTION THE SPECIALIZED ANTIFRAUD PROTECTION AFFORDED BY FEDERAL SECURITIES LAWS

Whether the transactions qualify as securities is a question of law, making appellate review appropriate. Further amendment on the securities claim would not alter the legal determination, and the District Court's dismissal is ripe for review.

Under the *Howey* test, an investment contract[7] exists when there is (1) an investment of money, (2) in a common enterprise, (3) with an expectation of profits produced from the efforts of others. *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir.

---

[7] An investment contract for purposes of the Securities Act means a contract, transaction or scheme. *McConnell v. Frank Howard Allen & Co*., 574 F. Supp. 781, 784 (N.D. Cal. 1983).

15

2003). Plaintiff alleged sufficient facts to meet these elements. The District Court erred in finding otherwise.[8]

### A. An "Investment of Money"

"The "investment of money" prong of the *Howey* test "requires that the investor 'commit his assets to the enterprise in such a manner as to subject himself to financial loss." *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976) (*per curiam*).

### B. "In a Common Enterprise"

"[The common enterprise [prong] is one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties" *Securities & Exchange Commission v. Glenn W. Turner Enterprises Inc.*, 474 F.2d 476, 482 n.7 (9th Cir. 1973); ("When we embraced vertical commonality... we did not state that we intended to replace horizontal with

---

[8] Although "ordinary real estate investments ... usually are not securities under either Federal or State law, the facts of each case determine whether or not particular instruments are securities." *Teague v. Bakker,* 35 F.3d 978, 987 n. 9 (4th Cir.1994) (quoting *Kosnoski v. Bruce,* 669 F.2d 944, 947 n. 3 (4th Cir.1982)); *Bender v. Cont'l Towers Ltd. P'ship,* 632 F.Supp. 497, 500–01 (S.D.N.Y.1986); *see also* Thomas Lee Hazen, 1 Law Sec. Reg. § 1.6 (2013). As Shakespeare wrote, "[T]hat which we call a rose, [b]y any other name would smell as sweet." William Shakespeare, *Romeo and Juliet,* act 2, sc. 2. The same principle applies here when determining whether a real-estate transaction is a security: substance governs, not name or label or form. *United Hous. Found., Inc. v. Forman,* 421 U.S. 837, 848, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). What matters is the economic reality of the transaction. *Id.* So long as money is invested in a common enterprise with profits anticipated by virtue of others' work, there may be an investment contract. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1130 (9th Cir. 2013).

16

vertical commonality; rather, we broadened the meaning of common enterprise beyond the 'strict pooling requirement' used by other circuits. In other words, we simply added an additional means of establishing a common enterprise, which comes into play only when there is no pooling of funds by several investors in a venture.") *Hocking v. Dubois*, 839 F.2d 560, 566-567 (9th Cir. 1988).

"[T]he second prong's requirement of a "common enterprise" has been construed by this Circuit as demanding either an enterprise common to the investor and the seller, promoter or some third party (vertical commonality) or an enterprise common to a group of investors (horizontal commonality)." *Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989).

### C. "With an Expectation of Profits Produced from the Efforts of Others"

"The third prong of this test, requiring "an expectation of profits produced by the efforts of others," involves two distinct concepts: whether a transaction involves any expectation of profit and whether expected profits are the product of the efforts of a person other than the investor." *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009)

### D. The Investment Contract Among Brown, Assentato, Tax Deed Enteprises and Steve Weera Tonasut Trust.

In *Marine Bank v. Weaver*, 455 U.S. 551 (1982), the Supreme Court distinguished private agreements from securities under Federal law. However, the Court's analysis in *Footnote 11* explicitly left open the possibility that business

17

agreements with speculative elements could fall within the ambit of Federal securities laws.[9] The Court acknowledged that certain transactions, while private in nature, might still exhibit characteristics that align with traditional securities, particularly when speculative risks and external factors play a central role.

The business agreement at issue here—dependent on future development, fluctuating market conditions, and external forces outside the parties' control—parallels the speculative arrangements historically regulated under Federal securities laws. This business agreement embodies the expectation of profit derived primarily from the efforts of others, satisfying the criteria established in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).

This case is not about creating a Federal common law remedy for every private agreement or speculative venture. *Marine Bank* made clear that the application of Federal securities laws depends on the specific facts and circumstances of each case. As the Court emphasized in *Footnote 11*, privately negotiated agreements are not excluded from the definition of a security where they carry the hallmarks of speculation, risk-sharing, and reliance on third-party efforts.

Here, the agreement is not a routine transaction—it is a speculative venture between the parties, where the fortunes of investors are tied to pooled resources, the

---

[9] "Each transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole." *Marine Bank v. Weaver*, 455 U.S. 551, 561 n.11 (1982).

success of a common enterprise, and the entrepreneurial efforts of others. The application of Federal securities laws to this case is tailored to these facts, ensuring the protections Congress intended without overextending Federal jurisdiction into private contracts lacking a speculative nature, among other things.[10]

By its very nature, this business agreement reflects a risk-sharing and entrepreneurial venture, with profits tied to the success of external efforts beyond the individual parties' control. Such speculative investments (unless there is an exemption) have long been recognized as requiring Federal oversight to ensure investor protection and [real estate] market integrity. Accordingly, the agreement in question fits squarely within the historical and legal framework of securities subject to Federal regulation.[11]

Last, the term 'lame duck' may resonate today in aftermath of the 2024 election, but its origin is rooted in the financial markets of the 18th century. It described speculators who defaulted on their obligations, leaving others to shoulder the burden of their failed promises. In this case, the agreement embodies the same

---

[10] "Accordingly, under the undisputed facts, it is clear that the agreements left "so little power in the hands of the partner[s] or venturer[s] that the arrangement[s] in fact distribute[d] power as would a limited partnership." *Williamson,* 645 F.2d at 424. *McConnell v. Frank Howard Allen & Co.,* 574 F. Supp. 781, 786 (N.D. Cal. 1983).

[11] While unpublished opinions may provide persuasion, they are not controlling authority in the Ninth Circuit. This case does not invite Federal oversight of every private business agreement, but instead applies the well-established *Howey* framework to a speculative real estate venture where the facts demonstrate the need for regulation. As the Supreme Court observed in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), "[i]t is emphatically the province and duty of the judicial department to say what the law is."

speculative risks that gave rise to the term. Securities laws exist to prevent modern 'lame ducks'—financial ventures where the fortunes of the parties are left to crumble under the weight of speculation and unregulated promises. The alleged facts make clear that this agreement, like the failed ventures of history, is exactly the type of arrangement that Federal securities laws were designed to regulate. In other words, protection from 'lame ducks' aka the Defendants-Appellees.

### E. Sale of a Security

"Section 2(3) of the Act, defines "sale" as including "* * * every * * * disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value * * *." "The securities were disposed of for value in the transactions involved, and hence the transactions are covered by the broad definition of the statute." *See Llanos v. United States*, 206 F.2d 852, 854 (9th Cir. 1953)[12] (citing *Bogy v. United States*, 6 Cir., 96 F.2d 734, 736, *certiorari denied*, 305 U.S. 608, 59 S.Ct. 68, 83 L.Ed. 387). "The term "sale" is defined by § 77b(3), Title 15 U.S.C.A., as including every "contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value."" *Suetter v. United States*, 140 F.2d 103, 104 (9th Cir. 1944).

---

[12] This case has not been overruled or distinguished by the Ninth Circuit Court and stands as an alternative theory to reverse the District Court's decision.

### F. As a Matter of Law

Last, as this Court boldly noted… "If the *Howey* analysis is undertaken, the securities laws are found to apply, and the application of the securities laws places undue burdens on developers, real estate brokers, or condominium owners, changes in the law should be sought from Congress or the Securities and Exchange Commission." *Hocking v. Dubois*, 885 F.2d 1449, 1462 (9th Cir. 1989); *Marbury v. Madison*, 1 Cranch 137, 170 (1803) ("The province of the Court is, solely, to decide on the rights of individuals.")[13]

---

[13] It is clear error of law that the District Court stated that "Instruments found to be securities generally involve[] offers to a number of potential investors, and are not private transaction[s]" when Congress has legislated and has said otherwise through the SEC. *See* Excerpts of Record at 21.

**a. Private Offering Exemption: s 4(2)**
"For nearly 30 years, the Supreme Court's opinion in *SEC v. Ralston Purina Co.*, [1953], has provided the framework for private offering analysis. In *Ralston Purina*, the Court held: "(T)he applicability of (s 4(2)) should turn on whether the particular class of persons affected needs the protection of the Act. An offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering.'" 346 U.S. at 125, 73 S.Ct. at 984. The Court there concluded that the company's offering to "key employees," who included stock clerks and bakeshop foremen, did not fall within the exemption because the employees "were not shown to have access to the kind of information which registration would disclose." *Id.* at 127, 73 S.Ct. at 985. Building on these concepts, courts have developed flexible tests for the private offering exemption…" *See S.E.C. v. Murphy*, 626 F.2d 633, 644–45 (9th Cir. 1980). In other words, to qualify as a *private* placement, an offering by an issuer must meet either the requirement of Sections 3(b) or 4(2) of the 1933 Act as developed through SEC interpretation and Court decisions or must follow the conditions set out under Regulation D of the 1933 Act. Persons claiming the exemption from the 1933 Act carry the burden of proving that its activities came within that exemption. Regardless, the 1934 Act Federal antifraud provisions apply if, indeed, the transaction is a security.

## Summary of Argument Chart

| Element | FAC Allegations | Supporting Details |
|---|---|---|
| I. Investment of Money | Plaintiff purchased the property for $299,000, including a $10,000 escrow payment. | - Funds sourced through a Vacant Land Purchase Agreement (VLPA) (FAC ¶ 24). <br> - Plaintiff personally invested additional funds to develop the solar farm (FAC ¶¶ 31, 37, 38). |
| II. Common Enterprise | Horizontal commonality through pooled investments and vertical commonality through shared risks. | - Operating Agreement defined the joint purpose: developing and selling the property as a solar farm (FAC ¶¶ 28-30, 40). <br> - Plaintiff bore development risks, while Defendants' profits relied on Plaintiff's managerial efforts (FAC ¶¶ 37, 61). |
| III. Expectation of Profits | Profits derived significantly from Plaintiff's efforts, supported by Defendants' financial backing. | - Plaintiff managed entitlements and financing for the solar project. <br> - Defendants provided initial financial backing and falsely promised additional support (FAC ¶¶ 37, 39-40). |
| Failure to Register Securities | Defendants sold an unregistered investment contract in violation of Section 5 of the Securities Act. | - Plaintiff alleged an investment contract existed, but Defendants failed to meet their obligations (FAC ¶¶ 49, 50). |

22

| Material Misrepresentations | Defendants made false promises of financial support and orchestrated foreclosure threats. | - Emails and communications suggested Defendants' intent to undermine Plaintiff's ownership and force foreclosure (FAC ¶¶ 41, 53, 65-69). |
| --- | --- | --- |
| Judicially Noticed Documents | Judicially noticed exhibits supported Plaintiff's allegations of securities violations and fraud. | - Operating Agreement, Notice of Default, and other recorded documents demonstrated Defendants' scheme to misrepresent their intentions. (FAC ¶¶ 41, 65-69). |

*[Intentionally Left Blank]*

II.   <u>THE DISTRICT COURT ABUSED ITS DISCRETION BY DISMISSING THE FAC WITH PREJUDICE, DESPITE NEW ALLEGATIONS IN THE FAC AND THE JUDICIAL NOTICE OF THOSE ALLEGATIONS, AT THE MOTION TO DISMISS STAGE</u>

The Plaintiff-Appellant's procedural stance during one hearing does not control the legal standard under Rule 15. Courts must evaluate whether an amendment could potentially fix the complaint, not the plaintiff's litigation posture. Denying leave to amend without considering futility would amount to an abuse of discretion under *Foman* and its progeny. Here a few of the law's greatest hits, relevant here.

1.   "A district court should grant leave to amend even if no request to amend the pleading was made, *unless it determines that the pleading could not possibly be cured by the allegation of other facts.*" *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (emphasis added).

2.   "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008). (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).

3.   "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181 (1962).

24

4.    "Several factors are usually used as criteria to determine the propriety of a motion for leave to amend." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). "These criteria include undue delay, bad faith, futility of amendment, and prejudice to the opposing party." *Id.* "While all these factors are relevant, the crucial factor is the resulting prejudice to the opposing party." *Id.*[14]

5.    "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**a. Leave to Amend What?**

If, as argued, the scheme was an investment contract and subject to the protections of Federal security laws then it follows that the Defendants-Appellees would need to proffer an exemption to registration. Thus, a remand to the District Court for further argument.

In the alternative, if the transactions do not qualify as Federal securities, the allegations in the FAC support a claim under RICO. Defendants-Appellees' acts, including filing a false Notice of Default and misrepresentations regarding property

---

[14] In other words, judicial notice of a falsely recorded foreclosure notice does not prejudice the Defendants-Appellees and to the contrary puts them on notice on what is to come.

ownership, could constitute predicate acts of mail and wire fraud under 18 U.S.C.

§§ 1341 and 1343 with further development. Plaintiff requests leave to file a Second

Amended Complaint to pursue RICO claims. *See* FAC ¶¶64-69; DC ECF No. 39;

Excerpts of Record at 40 & 46-54, respectively.

In other words, the notice about Brown's property wasn't just false, but the

Defendants-Appellee's involved also sent emails and texts trying to dupe Brown into

giving up his property. This wasn't random— Defendants-Appellee's have a plan to

take Brown's land using lies and fake promises. *See* 18 U.S.C. 1962(a)-(d).[15]

## CONCLUSION

The judgment of the District Court should be reversed, and the Plaintiff-

Appellant should be able to amend his Rule 10(b) claims, *or* in the alternative, the

Plaintiff-Appellant should be able to amend his complaint to assert his RICO claims

for relief. *See* 18 U.S.C. § 1964(c).[16]

---

[15] The Ninth Circuit has emphasized that the agreement to participate in a RICO conspiracy does not require direct commission of predicate acts but only agreement to further the illegal scheme. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005); A defendant can be liable under § 1962(d) without personally committing predicate acts, as long as they agreed to facilitate the conspiracy. *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004).

[16] …*except* that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. Under 18 U.S.C. § 1964(c), conduct actionable as securities fraud cannot form the basis of a RICO claim. Plaintiff did not previously pursue RICO claims because of the securities fraud allegations in this case. If this Court determines that no securities fraud occurred, this statutory limitation will no longer apply, allowing Brown to assert RICO claims based on Defendants' acts, including the filing of a false Notice of Default and predicate acts of mail and wire fraud, in addition to conspiracy. *Howard v. America Online Inc.*, 208 F.3d 741, 749-750 (9th Cir. 2000); Rule 15(c); 18 U.S.C. § 1962(a)-(d).

Dated: 01/19/2025        */s/ Clinton Brown*, Self-Represented[17]
                                   Clinton Brown
                                   1431 Ocean Ave, Unit 413
                                   Santa Monica, CA 90401
                                   clinton@atlasinc.solar
                                   310-775-7990

                                   *Self-Represented - Appellant*

---

[17] "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." *See* 28 U.S.C. § 1746

## CERTIFICATE OF SERVICE

CC: All Counsel of Record (via ACMS) on January 19, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** _____

The undersigned attorney or self-represented party states the following:

[ X ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**        */s/ Clinton Brown*        **Date** 01/19/2025

29

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** No. 24-6119

I am a self-represented party.

**This brief contains** 6,974 **words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
   Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select
   only one)*:
   [ ] it is a joint brief submitted by separately represented parties;
   [ ] a party or parties are filing a single brief in response to multiple briefs; or
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**     */s/ Clinton Brown*          **Date** 01/19/2025

30

## ADDENDUM OF STATUTORY PROVISIONS

<u>15 U.S.C. § 77a</u>
This subchapter may be cited as the "Securities Act of 1933".

<u>15 U.S.C. § 77b(a)</u>
Definitions: When used in this subchapter, unless the context otherwise requires—

<u>15 U.S.C. § 77b(a)(1)</u>
The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

<u>15 U.S.C. § 77c(a)(11)</u>
Any security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.

<u>18 U.S.C. § 1262(a)</u>
It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their

31

accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

18 U.S.C. § 1262(b)
It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1262(c)
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1262(d)
It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1264(c)
Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

28 U.S.C. § 1291:
The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

28 U.S.C. § 1331:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.